**IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EXCO RESOURCES (PA), LLC, | : | |
| **Plaintiff** | : | **No. 1:10-cv-1793** |
| | : | |
| vs. | : | |
| | : | **(Chief Judge Kane)** |
| NEW FORESTRY, LLC, | : | |
| **Defendant** | : | |

**MEMORANDUM**

Before the Court are cross motions for summary judgment.  (Doc. Nos. 40, 45.)  The

motions are ripe, and oral argument on the motions were held on June 8, 2012.  For the reasons

that follow, the Court will grant Defendant New Forestry's motion for summary judgment and

deny Plaintiff EXCO's motion for summary judgment.

**I.    BACKGROUND**[1]

This action for declaratory relief relates to a 120-acre tract of land located in rural Bell

Township, Clearfield County, Pennsylvania, within the Western District of Pennsylvania

("Subject Property").[2]  Since September 19, 1997, Defendant New Forestry has owned the

surface estate associated with the Subject Property.  EOG Resources owns the oil and gas rights

associated with the property by way of a December 1, 1997 deed to Somerset Oil and Gas, which

became EOG through a series of name changes, mergers, and conversions.  Plaintiff EXCO

asserts rights to the property by virtue of a February 20, 2008 lease and conveyance agreement

from EOG and through a license agreement.  This dispute presents two issues for resolution:

---

[1] The following facts are undisputed, unless otherwise noted.

[2] It is unclear why Plaintiff EXCO initiated this matter in the Middle District; however,
Defendant New Forestry has agreed to proceed in this venue.

whether EXCO's ownership rights permit it to dispose of liquid waste from fracking operations beneath New Forestry's land; and what, if any, surface and subsurface rights EXCO is entitled to by virtue of the 2005 renewable license agreement for a disposal facility.

In addition to its ownership interests in the oil and gas estate, in 2005 EOG acquired from New Forestry a Salt Water Disposal Facility License ("License"), which permitted EOG to operate a salt water disposal facility ("Disposal Facility") on the property for an initial term of five years.  (Doc. No. 42-14.)  The Disposal Facility, used for the disposal of salt water from EOG's drilling operations into a depleted gas well ("Disposal Well"), included a concrete pad with a fenced area containing three tanks large enough to store 300 barrels each, a containment pond, and a pump house.  (Doc. No. 42 ¶ 23; see also Doc. No. 42-15 at 48; Doc. No. 42-19.) EOG also obtained a permit from the Environmental Protection Agency, which allows for the disposal of 21,000 barrels of brine wastewater per month.  (Doc. No. 42-18.)

Plaintiff EXCO purchased from EOG the Disposal Well and all of the property associated with it on February 20, 2008.  (Doc. No. 42-23.)  Through the agreement dated February 20, 2008, EOG assigned its rights under the License to EXCO.[3]  (Doc. No. 47 ¶ 82.)  New Forestry does not challenge the validity of the purported assignment for purposes of the instant motions, but maintains that neither EXCO nor EOG obtained its written consent before executing the assignment.  (Doc. No. 41 at 6.)  Since that time, EXCO has operated the Disposal Well and the Disposal Facility, disposing of wastewater from its mining operations in the region, including "frac fluids," which consists of brine-based wastewater from the hydraulic fracturing of

---

[3] While agreeing generally that the assignment occurred, New Forestry maintains that EOG did not secure its permission for this assignment.

Marcellus Shale.

The initial term of the License that EOG assigned to EXCO was set to expire on August 12, 2010.  In May 2009, EXCO sought to extend the License for an additional five years, and sought permission to expand the Disposal Facility.  (Doc. No. 42-32.)  Over the course of about a year, the parties negotiated over insurance and bonding issues related to the License.  New Forestry and EXCO never agreed to the expansion or to an amendment of the License.  (See Doc. No. 42-21 at 14; 42-15 at 66.)

On June 28, 2010, New Forestry notified EOG and EXCO that the License would expire on August 11, 2010, because it had not been properly renewed.  (Doc. No. 42-33.)  Thereafter, EXCO and New Forestry began negotiating in an effort to reach a new agreement; however the parties did not reach an agreement.  On August 6, 2010, EXCO wrote New Forestry and tendered $11,171.43 for a renewed five-year term.  (Doc. No. 42-34.)  In response, New Forestry issued a cease-and-desist letter, informing EXCO that it could not exercise any rights under the License because it had not timely renewed the License.  (Doc. No. 53-8.)

EXCO brought this action to ascertain its rights under the oil and gas lease and the License.  EXCO's second amended complaint contains two counts.  First, EXCO seeks a declaration that it has the right to the reasonably necessary use of the surface of the Subject Property to access the Disposal Well (Count I).  In the alternative, EXCO seeks a declaration that it is an assignee under the License, that it renewed the License, and that it has the right to operate the Disposal Well and the Disposal Facility for the five-year term of the renewed License (Count II).  After EXCO initiated the instant matter, the parties have agreed to several extensions of the License in order to preserve the status quo pending the resolution of this action.

II.    **DISCUSSION**

On February 6, 2012, New Forestry filed a motion for summary judgment, arguing that: (1) EXCO's oil and gas leasehold interest does not provide it with a right to use the Subject Property to dispose of waste fluid from its drilling operations; and (2) EXCO did not properly renew the License because it was not in compliance with the License and because it failed to timely provide notice and payment.  (Doc. No. 40.)  On March 1, 2012, EXCO filed a cross motion for summary judgment, arguing that: (1) it owns the Disposal Well, including the "space occupied thereby," and has the right to use the surface of the Subject Property for disposal purposes; and (2) it properly renewed the License.  (Doc. No. 45.)  Because the two motions involve substantially the same issues, the Court will address both motions.

A.    **EXCO's Property Interest**

In Count I of its second amended complaint, EXCO seeks a declaration that it has the right to use the surface of the Subject Property for disposal purposes by virtue of its subsurface rights.  The parties dispute whether EXCO's oil and gas rights include a right to use the subsurface for disposal purposes, and whether EXCO has an easement to use the surface for disposal purposes.

1.    *Subsurface Rights*

The essence of the present-day dispute harkens back to the deed separating the oil and gas estate.  The 1965 deed granted the oil and gas owner the "rights, titles, and interests in and to all of the oil and gas . . . and the space occupied thereby."  (Doc. No. 42-2.)  That language, New Forestry asserts, allows the oil and gas owner to obtain the oil and gas from the space that it occupies and precludes another person from using the space occupied by the oil and gas but does

not give the oil and gas owner rights to the space once the oil and gas are removed.  EXCO interprets the same language as allowing it to use the space occupied by the Disposal Well without limitation.

EXCO asserts that the rights to the space occupied by the Disposal Well were severed in the 1965 deed, and transferred to its predecessor.  In the alternative, EXCO argues New Forestry is equitably estopped from arguing that EOG does not own the space comprising the Disposal Well, because it acknowledged in the License that EOG had the right to use the space occupied by the Disposal Well for disposal purposes.  EXCO asserts that in entering into the conveyance agreement with EOG, it relied on New Forestry's written acknowledgment of EOG's right to the space as contained in the License.

In order to determine the extent of EXCO's property rights with respect to the Disposal Well, the Court must construe the meaning of the 1965 severance deed.  In construing a deed, the Pennsylvania Supreme Court has established the following rules:

> (1) . . . the nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident, or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words; (2) effect must be given to all the language of the instrument and no part shall be rejected if it can be given a meaning; (3) the language of the deed shall be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

Highland v. Comm. of Pa., 161 A.2d 390, 402 (Pa. 1960), cert. denied, 34 U.S. 901 (citing Brookbank v. Benedum Trees Oil Co., 131 A.2d 103 (Pa. 1957)).  Further, the interpretation of a deed is governed by the parties' intent at the time of entering into the deed, which is inferred from a reading of the entire contract.  Wilkes-Barre Twp. Sch. Dist. v. Corgan, 170 A.2d 97, 98

(1961).

The 1965 deed unambiguously severed all "rights, titles, and interests in and to all of the oil and gas . . . and the space occupied thereby, . . . in, under, underlying, upon, contained in, or that may be produced from" the Subject Property from all rights to the surface of the Subject Property.  (Doc. No. 42-2.)  To give meaning to this language, the Court must consider the nature, subject matter, and purpose of the deed at the time that it was executed, which requires an inquiry into the property rights associated with surface and mineral estates in Pennsylvania.

Pennsylvania law recognizes three estates in land: (1) the minerals, (2) the surface, and (3) the surface support.  Schuster v. Pa. Turnpike Comm'n, 149 A.2d 447, 447 (Pa. 1959) (quoting Smith v. Glen Alden Coal Co., 32 A.2d 227, 234 (Pa. 1943)).  Oil and gas are considered minerals.  Marshall v. Mellon, 36 A. 201, 201 (Pa. 1897).  The owner of the surface typically owns the real property "downward to the center of the earth and upward indefinitely." Del. & Hudson Canal Co. v. Huges, 38 A. 568, 869 (Pa. 1897).  However, this general rule can be modified; "the surface of the land may be separated from the different strata underneath it, and there may be as many different owners as there are strata."  Chartiers Block Coal Co. v. Mellon, 25 A. 597, 598 (Pa. 1893).  Just as the surface may be separated from the different strata, subterranean gas and minerals can be severed from the surface owner's property.  Hutton v. Carnegie Natural Gas Co., 51 Pa. Super. 376, 381 (1912).  The mineral owner has an interest not only in the minerals, but also in the space occupied by the minerals.  The interest in the space occupied by the minerals is not perpetual; rather, the mineral owner's interest in the space is "in the nature of an estate determinable, which reverts to the surface landowner by operation of law at some time subsequent to the removal of the" minerals.  U.S. Steel Corp. v. Hoge, 468 A.2d

6

1330, 1384 (Pa. 1983).

Upon review of the 1965 deed, the Court finds that it severed only the oil and gas rights associated with the Subject Property, which included an estate determinable in the space occupied by the oil and gas.  The deed did not sever a fee simple interest in the subsurface. EXCO argues that construing the deed as not conveying the space occupied by the depleted gas well would fail to give meaning to the reference to the "space occupied thereby."  However, severance of the oil and gas and the space occupied thereby is entirely consistent with the rule that an oil and gas owner has an estate determinable in the space occupied by the oil and gas. See U.S. Steel, 468 A.2d at 1384 (holding that a mineral owner's rights in the situs of the minerals is "in the nature of an estate determinable"); Chatiers, 25 A. at 599 ("The position that the owner of the coal is also the owner of the hole from which it has been removed, and may forever prevent the surface owner from reaching underlying strata, has no authority in reason, nor, do I think, in law."); Lillibridge v. Lackawanna Coal Co., 22 A. 1035, 1037 (Pa. 1891) ("[H]ow is it possible to conceive of such a thing as the ownership of the space independently of the coal?"); Webber v. Vogel, 42 A. 4, 5 (Pa. 1899) ("The owner of the land above and below has a right to the reversion of the space occupied by the coal within a time contemplated by the parties when they sever that peculiar part of the land from its horizontal adjoiners.").

To support its argument that the 1965 deed severed the "space," EXCO contends that it is relatively common to convey the space formerly occupied by minerals.  (Doc. No. 62 at 12.) However, none of the cases cited by EXCO refer to a deed that conveyed or severed mineral rights along with the "space occupied thereby."  For example, the operative deed in City of Kingston v. Knaust, one of the cases that EXCO cited, was not a mineral deed; rather, the deed

conveyed, inter alia, the "caves under ground." City of Kingston v. Knaust, 733 N.Y.S.2d 771 (N.Y. App. Div. 2001).

A plain reading of the 1965 deed reveals that the parties did not intend to sever the subsurface strata for whatever purpose the oil and gas owner should choose. Rather, the language and subject matter of the deed indicates that the parties intended to sever the oil and gas rights associated with the Subject Property along with rights to the space occupied by the oil and gas during removal and certain surface rights necessary for removal of the oil and gas. This intent is evinced by the repeated references throughout the deed to oil and gas, including a number of surface rights related to oil and gas. Further, the parties' course of conduct indicates that they did not construe the deed as conveying disposal rights. See Ryan v. Hudak, 185 A.2d 570, 572 (Pa. 1962) ("Moreover, subsequent acts of the parties, tending to show the construction they themselves placed upon the writing are important in determining their intention if such is not clearly expressed therein."). For example, when EOG desired to dispose of waste fluids in the Disposal Well, it sought New Forestry's permission and negotiated the License. Thus, given the language and subject matter of the deed along with the parties' course of conduct, the Court is satisfied that EXCO's ownership rights do not permit it to use the subsurface Disposal Well for disposal purposes.

Further, EXCO's argument that New Forestry should be estopped from arguing that it does not have a right to the space comprising the Disposal Well is not supported by the express language of the License. EXCO argues that the language of the License evidences New Forestry's agreement that, as owner of the oil and gas estate, EOG had the right to use the space of a formerly producing gas well for disposal: "WHEREAS, Licensee, the owner of the oil and

gas in and underlying the Premises, is the owner and operator of a natural gas well known to Licensee as Gas Well No. 5560, which is located on the Premises . . . ."  (Doc. No. 42-14.) Nothing in the second whereas clause recognizes that EOG had any rights to use the depleted well for disposal purposes.  Further, the second whereas clause cannot be read in isolation.  The first whereas clause makes clear that EOG and New Forestry believed that New Forestry owned all of the rights to the property "except coal, gas and oil."[4]  Additionally, the License as a whole, which granted EOG the right to construct a Disposal Facility and set the terms by which EOG was permitted to use the depleted well for disposal purposes, makes clear that the parties did not believe that EOG could use the well for disposal purposes without an agreement.  Read with the first whereas clause, and in light of the License as a whole, the second whereas clause reinforces that EOG owned the rights to the oil and gas associated with the Subject Property, not rights to the space occupied by the depleted gas well.  The second whereas clause is not inconsistent with the position that New Forestry is now taking, which is that the oil and gas owner does not have rights to operate the Disposal Well and Disposal Facility absent an express agreement.  Thus, the doctrine of equitable estoppel is not implicated.  See Doppler v. Doppler, 574 A.2d 1101, 1105 (Pa. Super. Ct. 1990) (setting forth the standard for equitable estoppel).

> 2.    *Surface Rights*

Regarding the surface rights, New Forestry asserts that the 1965 deed that severed the oil and gas estate from the Subject Property did not provide the oil and gas owner with an easement to use the surface for disposal of drilling waste.  The 1965 deed provided the oil and gas owner

---

[4] The first "whereas" clause reads: "WHEREAS, Licensor is the owner in fee, except coal, gas and oil, of a parcel of land . . . ."

with, inter alia, "such free and uninterrupted right-of-way as may be vested in Grantors, . . . in such a manner as may be proper, convenient and necessary for the purpose of exploring for, mining, boring or drilling for said oil and gas . . . ."  The deed did not expressly provide the oil and gas owner with the right to access the surface to dispose of waste fluids from its oil and gas operations throughout the region and Commonwealth.  Thus, relying on the maxim expressio unius est exclusio alterius, New Forestry argues that the oil and gas owner's surface rights are limited to those activities associated with obtaining the oil and gas underlying the property.

In response, EXCO argues that because it owns the Disposal Well and is the lessee of the disposal rights from EOG, who owns the space occupied by the Disposal Well, EXCO has the right to use the surface as necessary to utilize its disposal rights.  EXCO asserts that the right to access the surface is an implied right that attaches to subsurface owners and that its implied rights are not eviscerated because it was also expressly granted surface rights related to oil and gas removal.  Because the 1965 deed did not exclude any other surface rights, EXCO argues that its implied right to the reasonably necessary use of the surface to utilize the Disposal Well remains.

Because the Court finds that the 1965 severance deed did not convey to the oil and gas owner any rights to dispose of waste fluids in the Disposal Well, the Court finds no support for EXCO's argument that it has the implied right to access the surface for disposal purposes.  The law in Pennsylvania is clear that the owner of minerals underlying the surface of a property "has the right to enter the surface property to access what it owns."  Belden & Blake Corp. v. Com., Dept. of Cons. & Nat. Res., 969 A.2d 528, 532 (Pa. 2009).  However, this implied right is limited to the right of access.  "The grantee of the [minerals] owns the [minerals] but nothing

else, save the right of access to it and the right to take it away." <u>Chartiers</u>, 25 A. at 599; <u>see also</u>

<u>Webber</u>, 42 A. at 5 (stressing that by purchasing a coal estate one does not obtain "an undisputed

and perpetual right of way under another's land").  Thus, while EXCO had an implied right to

use the surface to take away the subterranean minerals, the implied right does not extend to

perpetual use of the surface for purposes other than accessing those minerals.

### B.      Renewal of the License

In Count II of its second amended complaint, EXCO seeks a declaration, in the

alternative, that it is an assignee under the License, that it renewed the License, and that it has

the right to operate the Disposal Well and the Disposal Facility for the five-year term of the

renewed License.  New Forestry argues, however, that EXCO failed to renew the License.  First,

New Forestry argues that in 2010, when EXCO provided payment to renew the License, EXCO

was not eligible to renew because it was not in compliance with the terms of the License, and

because the period of time to exercise the option had expired.  Further, New Forestry argues that

EXCO's conduct in 2009 did not constitute a renewal.

### 1.      *EXCO's Eligibility to Renew in 2010*

On August 6, 2010, EXCO sent New Forestry a letter, attempting to renew the License

and tendering $11,171.43 for a five-year term.  (Doc. No. 42-34.)  New Forestry argues that

EXCO was not eligible to renew the License at that time, because it violated its permit with the

EPA, and because it stored and disposed of hazardous substances in violation of the terms of the

License.  Paragraph 6 of the License provides that the License may be renewed only if the

licensee is in full compliance with all of the terms and conditions of the License.  (Doc. No. 42-

14.)  One such term is the requirement that the licensee comply with all applicable laws of the

11

United States of America relating to the Disposal Well.  Another term prohibits the licensee from

storing, disposing of, or otherwise releasing any hazardous substance as defined by the

Comprehensive Environmental Response, Compensation, and Liability Act of 1980

("CERCLA").

First, New Forestry asserts that EXCO operated the disposal well in violation of the EPA

permit, thereby violating the Safe Drinking Water Act, 40 C.F.R. § 144.51(a) ("SDWA"), which

provides that the violation of an EPA permit constitutes a violation of the SDWA.  Next, New

Forestry asserts that EXCO disposed of and stored hazardous substances on the Subject Property

in violation of the License, because the waste fluid that EXCO stores at the Disposal Facility

contains ammonia-nitrogen, arsenic, benzene, cadmium, cobalt, manganese, methanol, nickel,

toluene, and zinc.  All of these substances are defined as hazardous substances under CERCLA.

EXCO does not deny the violations of the License.  Instead, EXCO argues that: (1) compliance

with the terms of the License is a covenant rather than a precondition of renewal; (2) New

Forestry failed to provide EXCO with notice and an opportunity to cure; and (3) even if

compliance with the License were a precondition, EXCO provided written notice of renewal

before the alleged violations occurred in 2010.

EXCO's first argument, that compliance with the License was not a precondition of

renewal, is inconsistent with the plain language of the License.  Paragraph 6 of the License

provides that the License has an initial term of five years, which "may be renewed by Licensee

for an additional term of five (5) years, if Licensee is in full compliance with all of the terms and

conditions of: (A) this License; and (B) the Gas Lease."  In Pennsylvania, "a condition precedent

to an obligation must be expressed by clear language or it will be construed as a promise or

covenant.  Language not clearly written as a condition precedent is presumed not to be, unless

the contrary clearly appears to be the intention of the parties." Mellon Bank, N.A. v. Aetna Bus.

Credit, Inc., 619 F.2d 1001, 1016 (3d Cir. 1980) (citing Britex Waste Co. v. Nathan Schwab &

Sons, 12 A.2d 473 (Pa. Super. Ct. 1940); Potts Mfg. Co. v. Loffredo, 340 A.2d 468 (Pa. Super.

Ct. 1974); Sharp v. McKelvey, 172 A.2d 580 (Pa. Super. Ct. 1961)).  The language in paragraph

6 of the License is expressed in clear and unambiguous terms, allowing EXCO to renew only if it

is in full compliance with the License.

EXCO's second argument with respect to the eligibility to renew issue is not supported

by the language of the License.  EXCO argues that New Forestry's failure to provide EXCO with

notice of noncompliance and an opportunity to cure prevents it from refusing to recognize

EXCO's notice of renewal on the grounds of noncompliance.  Paragraph 18 of the License

provides that New Forestry may terminate the License if EXCO breaches the License and New

Forestry provides notice of the breach and an opportunity to cure.  The requirements for notice

and opportunity to cure relate to New Forestry's rights with respect to terminating the License.

These requirements are not referenced in paragraph 6, which details EXCO's rights with respect

to renewal of the License.  Further, it would not have been logical for New Forestry to provide

notice and an opportunity to cure at the time that it learned of the violations, in July 2010,

months after the May 13, 2010 deadline to provide written notice of renewal, because the

violations had ceased by that time.

Additionally, the payment and notice of intent to renew that was provided in August

2010 occurred months after the May 2010 deadline for renewal.  Such notice and payment could

not operate as a renewal, regardless of the eligibility issues discussed above, because it was not

13

timely.  See Warner v. Bedell Co., 123 A. 490, 491 (Pa. 1923) ("Ordinarily, the possession of [an

option] must exercise it on the day, or within the time specified . . . ."); W. Sav. Fund Soc. of

Phila. v. Se. Pa. Transp. Auth., 427 A.2d 175, 192 (Pa. Super. Ct. 1981).  Thus, EXCO did not

renew the License in 2010 when it provided payment and notice.

      EXCO also argues that it renewed the License before the alleged 2010 violations, through

its letter of May 20, 2009.  Because the License violations all allegedly occurred after that date,

EXCO argues that they could not have prevented it from renewing the License.  The Court will

discuss whether EXCO's May 20, 2009 letter was sufficient to renew the License below.

      *2.    EXCO's Purported Renewal in 2009*

      EXCO asserts that it has the right to operate the Disposal Well and Disposal Facility

under the License because it sufficiently renewed the License on May 20, 2009.  Paragraph 6 of

the License states that the right to renewal "shall be conditioned upon [EXCO] giving [New

Forestry] written notice of [EXCO]'s intent to renew at least ninety (90) days prior to the

expiration of this License, accompanied by payment to [New Forestry] in the amount of

$10,000.00, plus an amount equal to the sum of the annual cost of living increases since the date

of this License, indexed against the Consumer Price Index ('CPI'), for each of the prior years

during the term of this License up to the time of renewal."  EXCO argues that the only

precondition was that it provide written notice of an intent to renew before the May 2010

deadline, and that it provided such notice by letter on May 20, 2009.  The May 20, 2009 letter is

a request for an amendment to the License and expansion of the Disposal Facility and contains

the following language:

      As the undertaking of the construction and implementation of the
      proposed facility and pipeline will include a substantial cash

> expenditure, EXCO further requests that the respective Amendment
> to the License authorizing the construction and usage of the proposed
> facility and pipeline right of way to include an extension term of five
> (5) years from August 12, 2010.

New Forestry argues that the May 20, 2009 letter did not express an intent to renew the License;

rather, an amendment of the License accompanied by a five-year extension due to the substantial

cash expenditure involved with the expansion.  Further, New Forestry argues that EXCO was

required to provide payment before the May 2010 deadline in order to renew the License for an

additional five years.

The renewal provision in the License is an option contract, which is a contract to keep an

offer open.  See Schecter v. Watkins, 577 A.2d 585, 593 (Pa. Super. Ct. 1990).  In an option

contract, the optionee may exercise his option by unequivocally accepting the offer, thereby

forming a contract.  Id.  Acceptance must be "absolute and identical with the terms of the offer."

Hedden v. Lupinsky, 176 A.2d 406, 408 (Pa. 1962); see also 3 Corbin on Contracts § 11.8 (rev.

ed. 2003) ("[T]he notice by which the power of an option holder is exercised must be

unconditional and in exact accord with the terms of the option.").

Upon considering the plain language of paragraph 6 of the License and the May 20, 2009

letter, the Court is satisfied that EXCO did not unequivocally exercise its option.  The letter

merely communicated EXCO's request to amend the License, accompanied by a request for a

five-year extension to justify the costs of the proposed expansion of the Disposal Facility.  The

terms of EXCO's purported acceptance in the May 20, 2009 letter are different from the original

terms of the License, and are conditioned on New Forestry's acceptance of the proposed

amendments to the License.  Thus, EXCO's May 20, 2009 letter did not constitute notice of

EXCO's intent to renew the License, but rather was an offer to enter into a different agreement.

15

Furthermore, even if EXCO had provided sufficient notice, paragraph 6 of the License required that such notice be accompanied by payment.  EXCO does not deny that it did not tender payment before the May 2010 deadline.  Rather, EXCO argues that payment of the next term's rent was not a precondition to renewal.  EXCO argues that because the rental payment requirement is separated with a comma from the statement that the right to renewal is "conditioned upon" written notice, there is an ambiguity as to whether the payment clause is a precondition or a covenant.  However, upon reading paragraph 6 of the License, there is no ambiguity as to the meaning.  A condition precedent must "be expressed by clear language or it will be construed as a promise or covenant." Mellon Bank, 619 F.2d at 1016.  The clear language of paragraph 6 states that the right to renewal "shall be conditioned upon Licensee giving Licensor written notice of Licensee's intention to so renew at least ninety (90) days prior to the expiration of the License, accompanied by payment to Licensor in the amount of $10,000.00," plus a cost of living adjustment.  The Court is satisfied that there is no ambiguity, and that the payment requirement is a condition precedent to renewal of the contract.  Thus, EXCO did not renew the License in May 2009.

## III.   CONCLUSION

Because the Court finds that EXCO does not have a right to use the Disposal Well for disposal purpose based on its property rights stemming from the 1965 deed and did not properly renew the License, the Court will grant New Forestry's motion for summary judgment and will deny EXCO's motion for summary judgment.

An order consistent with this memorandum follows.

**IN THE UNITED STATE DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EXCO RESOURCES (PA), LLC,** | : | |
| **Plaintiff** | : | **No. 1:10-cv-1793** |
| | : | |
| **vs.** | : | |
| | : | **(Chief Judge Kane)** |
| **NEW FORESTRY, LLC,** | : | |
| **Defendant** | : | |

**ORDER**

**AND NOW**, on this 25th day of July 2012, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendant New Forestry's motion for summary judgment (Doc. No. 40) is **GRANTED** and Plaintiff EXCO's motion for summary judgment (Doc. No. 45) is **DENIED**.

The Clerk of Court is directed to enter judgment in favor of New Forestry, LLC and against EXCO Resources (PA).  The Clerk of Court is further directed to close the case.

 s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania

17